UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

**NEAL HART,**

                              **Plaintiff,**

v.                                                  5:19-CV-00342 (NAM/ML)

**SIMON'S AGENCY, INC.,**

                              **Defendant.**
───────────────────────────────────────

**APPEARANCES:**

Evan S. Rothfarb
Daniel A. Schlanger
Schlanger Law Group, LLP
80 Broad Street, Suite 1301
New York, NY 10004
*Attorneys for Plaintiff*

Matthew G. Jubelt
Steven D. Lickstein
Newman & Lickstein
109 South Warren Street, Suite 404
Syracuse, NY 13202
*Attorneys for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Neal Hart brings this action against Defendant Simon's Agency, Inc. alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). (Dkt. No. 130). Now before the Court are: 1) Defendant's renewed motion for summary judgment; and 2) Plaintiff's cross-motion for partial summary judgment. (Dkt. Nos. 169, 171). The parties have also filed

1

numerous responsive papers. (Dkt. Nos. 178–80, 185–90). For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## II. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on March 18, 2019 and filed an Amended Complaint on April 25, 2019. (Dkt. Nos. 1, 6). On August 6, 2020, Plaintiff asked for Defendant's consent to file a Second Amended Complaint. (Dkt. No. 105-1). Instead, Defendant moved for summary judgment, (Dkt. No. 103), and Plaintiff filed a cross-motion for leave to amend, (Dkt. No. 117). On March 30, 2021, the Court denied Defendant's motion without prejudice to renew upon the completion of discovery and granted Plaintiff leave to amend.[1] (Dkt. No. 129). Plaintiff filed a Second Amended Complaint (Dkt. No. 130), and discovery is now closed (*see* Dkt. No. 168).

### B. Facts[2]

Defendant Simon's Agency, Inc., ("Simon's") collects debt for third-party clients and reports information concerning debtors to credit reporting agencies ("CRAs" and also referred to as consumer reporting agencies). (Dkt. No. 171-1, p. 1). Plaintiff maintained a personal bank account with Empower Federal Credit Union ("EFCU"). (*Id.*). In 2013, EFCU contacted Defendant regarding a debt of $519.13 owed by Plaintiff, and Defendant began collection efforts, which included reporting data to CRAs about the EFCU debt in the form of a tradeline.

---

[1] This case was reassigned to the Hon. Norman A. Mordue on February 18, 2021. (Dkt. No. 127).

[2] The facts have been drawn from the parties' Local Rule 56.1(a) statements, (Dkt. Nos. 169-2, 171-1), their responses and additional statements, (Dkt. Nos. 179, 180-1), and the parties' attached exhibits, depositions, and declarations to the extent that they are in admissible form. Due to sensitive personal and financial information, some of the exhibits have been sealed on the docket. The Court notes that the parties' submissions contain many errors and the responses to the respective statements of facts often fail to comply with Local Rule 56.1(b).

(*Id.*, pp. 2–3). A "tradeline" refers to a record of activity for any type of credit extended to a borrower and reported to a credit reporting agency.[3]

Plaintiff admitted that he owed a debt to EFCU, but he testified that EFCU charged him erroneous overdraft fees that contributed to the $519.13 amount. (Dkt. No. 179-1, pp. 13–14). Plaintiff testified that he got injured at work and consequently his checking account became overdrawn. (*Id.*). On May 15, 2014, EFCU deducted $519.13 in payment for the debt from Plaintiff's checking account. (Dkt. No. 169-2, ¶ 10). At this time, Defendant noted in its tradeline that Plaintiff's debt to EFCU was paid in full. (Dkt. No. 171-9, p. 7).

According to Plaintiff, he discovered that despite this payment, Defendant had communicated incorrect information about the tradeline to CRAs, including Equifax and Experian, and between 2014 and 2018, Plaintiff submitted numerous consumer disputes to Defendant and CRAs about the tradeline. (Dkt. No. 171-1, p. 3). For these disputes, Plaintiff selected options (which generated corresponding codes) including: 1) "Not aware of collection"; 2) "Claims true identity fraud, account fraudulently opened"; 3) "Not his/hers"; 4) "Not liable for account (i.e. ex-spouse, business)"; and 5) "Belongs to another individual with same/similar name." (Dkt. No. 171-9, pp. 3–7).[4] Plaintiff testified that he submitted disputes using various descriptions to get the CRAs to investigate and correct the tradeline, which remained on his credit reports. (Dkt. No. 179-1, p. 77). Defendant responded by confirming that the tradeline was accurate and that Plaintiff's account was paid in full. (Dkt. No. 171-9, pp. 5–7).

---

[3] *See* https://www.investopedia.com/terms/t/trade-line.asp (last visited September 30, 2022).

[4] Plaintiff submitted most of the disputes through the Online Solution for Complete and Accurate Reporting ("e-OSCAR"), which supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Dataform ("AUD") processing as well as a number of related processes that handle registration, subscriber code management and reporting. *See* https://www.e-oscar.org/getting-started/about-us (last visited September 30, 2022).

On December 17, 2017, Plaintiff submitted a dispute to Equifax regarding the tradeline that was coded as "not liable for account (e.g., ex-spouse, business")." (Dkt. No. 171-10, p. 2). On or about January 12, 2018, Defendant responded by verifying the information in its tradeline and noting that the account was paid in full. (Dkt. No. 171-9, p. 4; Dkt. No. 171-10, p. 2). On February 21, 2018, Plaintiff complained to Defendant that the tradeline was still showing the debt as outstanding on his credit report. (Dkt. No. 171-9, p. 4).

On February 22, 2018, Plaintiff sent a letter to Defendant regarding "erroneous information reported to credit bureaus." (Dkt. No. 180-4). Plaintiff wrote that his Experian credit report showed, as of August 2016, that he had an unpaid debt of $519 owed to Defendant. (*Id.*). Plaintiff continued that: "This information is wrong and is negatively impacting my credit report and score and was directly referenced in a recent credit decision." (*Id.*). He requested that "the collection account be deleted." (*Id.*). On or about March 1, 2018, Defendant received Plaintiff's letter and noted that: 1) it had reported the account as paid in full since May 2014; and 2) the inaccurate information in Plaintiff's credit report was likely due to an earlier dispute Plaintiff submitted to Experian in August 2016. (Dkt. No. 171-9, p. 4). Defendant's position was that Plaintiff had to clear up the issue with Experian and Equifax. (*Id.*).

On or about August 22, 2018, Plaintiff submitted a dispute to Experian that the tradeline was for an account that was "Not his/hers," and Defendant responded on August 31, 2018 by verifying that the information was accurate as reported and that Plaintiff's account was paid in full. (Dkt. No. 171-9, p. 4; Dkt. No. 171-11, p. 2). On September 1, 2018, Plaintiff received a report from Experian regarding his dispute of the Simon's tradeline. (Dkt. No. 169-4, pp. 117–19; Dkt. No. 171-13). Among other things, the report indicated that Plaintiff had paid $519 owed to EFCU, and further, that the debt was first reported in August 2016. (*Id.*).

4

On September 1, 2018, Plaintiff received a letter from Capital One rejecting his application for a credit card, on the basis that they had received negative information about Plaintiff's credit from Equifax. (Dkt. No. 125-2). On September 9, 2018, Plaintiff complained to EFCU that Defendant was continuing to report inaccurate information about the tradeline. (Dkt. No. 169-2, ¶ 16). Specifically, Plaintiff stated that Defendant was "reporting that my checking account had a credit limit of $3,000 and a history of balance information that absolutely makes no sense." (Dkt. No. 169-14, p. 2). Plaintiff also stated that Defendant was reporting the wrong date for the debt to EFCU and no monthly payments, all of which was impacting his credit score. (*Id.*, pp. 2–3).

The next day, after EFCU contacted Defendant about Plaintiff's complaints, Defendant reviewed the tradeline, noted that Plaintiff's account was paid in full, and referred EFCU to the CRA for more information. (Dkt. No. 169-2, pp. 4–5; *see also* Dkt. No. 171-9, p. 3). On or about September 11, 2018, Plaintiff submitted another dispute under the option "not his/hers," and Defendant responded by verifying that the information was accurate as reported and that Plaintiff's account was paid in full. (Dkt. No. 171-12, p. 2).

On September 13, 2018, EFCU contacted Defendant and requested that it delete the tradeline from Plaintiff's credit report, which Defendant agreed to do. (Dkt. No. 169-2, pp. 4–5). On September 14, 2018, Defendant submitted an electronic request for the deletion of its tradeline from Plaintiff's credit report. (Dkt. No. 103-12). Defendant sent confirmation to Plaintiff on the same day. (Dkt. No. 171-9, p. 3; Dkt. No. 171-6, p. 201). In response to Defendant's request, Experian "suppressed" the tradeline, causing the tradeline to be hidden from Plaintiff's credit history and appear as "deleted." (Dkt. No. 123-5, p. 5).

On September 21, 2018, Plaintiff submitted another dispute regarding the tradeline; Defendant responded by verifying that the information was accurate as reported and that Plaintiff's account was paid in full. (Dkt. No. 171-9, p. 3). At that time, Experian had already suppressed the tradeline, and on September 24, 2018, Experian informed Plaintiff that the tradeline would not appear in his credit report and would no longer be reported to any creditors. (Dkt. No. 169-2, ¶ 22).

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250. Further, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). When both sides move for summary judgment, courts "are required to assess each motion on its own merits and to view the evidence in the light most favorable to the party

6

opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)).

## IV.   DISCUSSION

Based on Defendant's handling of the tradeline dispute, Plaintiff claims that Defendant violated the FCRA in three ways: 1) "failing to conduct a reasonable investigation of [his] dispute"; 2) "failing to review all relevant information provided by consumer reporting agencies"; and 3) "failing to promptly modify, delete, and/or permanently block any information it could not verify as accurate." (Dkt. No. 130, ¶ 75).  Plaintiff also alleges that Defendant violated FDCPA, in that it "submitted false and erroneous information to Experian concerning a collection account appearing on Plaintiff's credit report." (*Id.*, ¶¶ 92–93).

The Court will first address Plaintiff's claims pursuant to the FCRA and then turn to Plaintiff's FDCPA claim.

### A.   FCRA Claims

"The FCRA 'regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information.'" *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (quoting 15 U.S.C. § 1681(b)).  An entity that reports credit information about consumers to credit reporting agencies is known as a "furnisher," and it has certain duties under the FCRA.  When a furnisher receives notice of "a dispute as to the completeness or accuracy of any information provided" to a CRA, it must "conduct an investigation," "report the results of the investigation to the consumer reporting agency," and if the disputed information "is found to be inaccurate or incomplete . . . modify that

7

item of information." 15 U.S.C. § 1681s-2(b). A furnisher must complete its investigation within 30 days. *See* 15 U.S.C. 1681s-2(b)(2).

To sustain a claim under Section 1681s-2(b), a plaintiff must show "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" (Dkt. No. 54, pp. 5–6) (citation omitted). The Court previously found that Defendant is a furnisher for purposes of the FCRA. (*Id.*, p. 6).

### 1. The Parties' Arguments

Defendant argues that Plaintiff's FCRA claims must fail because: 1) he lacks standing; 2) his claims are untimely; and 3) the undisputed facts show that it conducted reasonable investigations of Plaintiff's disputes. (Dkt. No. 169-1). In response, Plaintiff argues that he has standing, his claims are timely, and there are genuine issues of material fact about whether Defendant conducted a reasonable investigation. (Dkt. No. 180, p. 8).

### 2. Standing

"In the FCRA context, the Supreme Court made clear that 'a bare procedural violation, divorced from any concrete harm' fails to satisfy the injury-in-fact requirement of Article III." *Zlotnick v. Equifax Info. Services, LLC*, 583 F. Supp. 3d 387 (E.D.N.Y. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). For example, similar to the law regarding defamation, a plaintiff has standing to sue under the FCRA if a credit report containing misleading information is disseminated to third-party creditors, thereby affecting his credit worthiness, whereas a plaintiff whose report is not disseminated lacks standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209–10 (June 25, 2021).

8

Here, Defendant contends that Plaintiff has not shown that he suffered concrete harm attributable to its conduct. (Dkt. No. 169-1, pp. 23–27). In response, Plaintiff contends that he suffered harm from the tradeline dispute in three different forms: 1) copying and mailing costs; 2) emotional distress; and 3) "third-party credit defamation and a credit denial that occurred after Simon's validation of the disputed tradeline." (Dkt. No. 180, pp. 27–31).

The record shows that on September 1, 2018, Plaintiff received a letter from Capital One rejecting his application for a credit card. (Dkt. No. 125-2). Capital One explained that it had received negative information about Plaintiff's credit from Equifax. (*Id.*). Defendant argues that its tradeline was not included in the Equifax credit report reviewed by Capital One. (Dkt. No. 169-1, p. 16). But there is evidence that the tradeline was not deleted until September 14, 2018. (Dkt. No. 103-12). Therefore, viewing the evidence in Plaintiff's favor, the tradeline could have contributed to Capital One's rejection of Plaintiff's application. Further, the Court finds that Plaintiff's claims of emotional distress, which are supported by some evidence (Dkt. No. 183-1), could also amount to concrete harm. In sum, Plaintiff has adduced sufficient evidence to show standing for his FCRA claims.

### 3. Statute of Limitations

An action to enforce liability under the FCRA must be brought not later than the earlier of: 1) two years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or 2) five years after the date on which the violation occurs that is the basis for such liability. 15 U.S.C. § 1681p.

Plaintiff commenced this action on March 18, 2019. (Dkt. No. 1). Defendant contends that Plaintiff's disputes all stem from information he discovered in 2014, and therefore, his FCRA claims are barred by the two-year statute of limitations. (Dkt. No. 169-1, p. 9). In

9

response, Plaintiff argues that "each subsequent dispute and failure to conduct a reinvestigation creates a new claim . . . under the FCRA." (Dkt. No. 180, p. 11).

The FCRA states that the obligations of a furnisher arise upon receipt of notice of a consumer's dispute from a credit reporting agency. 15 U.S.C. § 1681s–2(b)(1). It follows that "each separate notice of dispute triggers a duty to investigate the disputed information, regardless of whether the information has been previously disputed." *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014). In other words, each alleged failure of a furnisher to comply with its FCRA obligations "constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information." *Id.* Therefore, although Plaintiff had notice of the Simon's tradeline issue since at least 2014, his claims are nonetheless timely to the extent they relate to disputes he reported to Defendant after March 18, 2017. This includes the disputes Plaintiff reported in December 2017, August 2018, and September 2018.

### 4. Defendant's Investigation

The FCRA directs furnishers to "conduct an investigation with respect to the disputed information" and "review all relevant information provided by the consumer reporting agency." 15 U.S.C. §§ 1681s-2(b)(1)(a–b). Courts view this language as imposing a "reasonableness standard for judging the adequacy of the required investigation." *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (citing cases). "The reasonableness of a furnisher's investigation depends upon the nature and scope of the consumer's dispute to the CRA." *Jenkins v. Capital One, N.A.*, No. 14 Civ. 5683, 2017 WL 1323812, at *6, 2017 U.S. Dist. LEXIS 57512, at *19–20 (E.D.N.Y. Feb. 28, 2017) (citing cases).

Here, the Court finds as a matter of law that Defendant's investigation of Plaintiff's tradeline disputes was reasonable under the circumstances. Plaintiff repeatedly disputed the Simon's tradeline by using various misleading descriptions that indicated the $519 debt was not his or that he was not liable for it. (Dkt. No. 171-9, pp. 3–7; Dkt. No. 179-1, pp. 56, 73–77). This despite the fact that Plaintiff admitted incurring the debt and made no protest when EFCU deducted the money from his account. (Dkt. No. 179-1, pp. 13–14, 20–22). Defendant responded within 30 days by verifying the tradeline information as accurate, i.e. that the debt belonged to Plaintiff, was owed to EFCU, and had been paid in full. (Dkt. No. 171-10; Dkt. No. 171-11; Dkt. No. 171-12). What Plaintiff appears to have wanted was for Defendant to remove the tradeline from any future reports to CRAs. (*See* Dkt. No. 171-9, p. 4). But the FCRA does not require that a furnisher delete a consumer's account upon receiving a notice of dispute; rather it "simply requires the furnisher of information to investigate and to report information from the investigation." *Ritchie v. N. Leasing Sys., Inc.*, No. 12 Civ. 4992, 2016 WL 1241531, at *17, 2016 U.S. Dist. LEXIS 40537, at *49 (S.D.N.Y. Mar. 28, 2016).

Again, the reasonableness of a furnisher's investigations depends upon the nature and scope of the consumer's dispute to the CRA. Plaintiff's December 2017 dispute essentially claimed that he was not liable for the account, and Defendant reasonably responded by verifying that its information was accurate and the account had been paid in full. (Dkt. No. 171-9, p. 4; Dkt. No. 171-10, p. 2). When Plaintiff further communicated in February 2022 that Experian showed the account still in collections as of August 2016, Defendant reasonably responded that it had reported the account as paid in full since May 2014, and that Plaintiff needed to follow up with Experian. (Dkt. No. 171-9, p. 4; Dkt. No. 180-4).

11

In August and September of 2018, Plaintiff twice submitted disputes describing the debt as "not his/hers," and Defendant reasonably responded by verifying that the information was accurate as reported and that Plaintiff's account was paid in full. (Dkt. No. 171-9, p. 4; Dkt. No. 171-11, p. 2; Dkt. No. 171-12, p. 2). Defendant's employee Leah Waffle testified that she followed company procedures, verified the tradeline account as paid in full, and communicated that fact to the CRAs. (Dkt. No. 171-7, pp. 104–14). On September 13, 2018, EFCU asked Defendant to delete the tradeline, and it did so the next day. (Dkt. No. 169-2, pp. 4–5).

At most, Plaintiff has shown some minor confusion and delay in Defendant's investigation and response, which was due to the multitude of different disputes he submitted. When Plaintiff and EFCU clarified the dispute, it was quickly resolved. Simply put, no jury could find that Defendant acted unreasonably under the circumstances. Therefore, Defendant is entitled to summary judgment on Plaintiff's FCRA claims. *See Frederick v. Capital One Bank (USA), N.A.*, No. 14 Civ. 5460, 2018 WL 1583289, at *8, 2018 U.S. Dist. LEXIS 50768, at *24–25 (S.D.N.Y. Mar. 27, 2018) ("[B]ecause no reasonable factfinder could conclude that Plaintiff can establish that [the defendant] did not reasonably investigate his disputes, his FCRA claim fails as a matter of law.").

### B.   FDCPA Claim

The FDCPA imposes certain requirements and restrictions on "debt collectors" with regard to their attempts to recover debts. *See* 15 U.S.C. § 1692. Among other things, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prove a violation of the FDCPA, a plaintiff "(1) must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt is considered a

'debt collector,' and (3) the defendant engaged in any act or omission in violation of FDCPA requirements." *Cohen v. Ditech Fin., LLC*, 342 F. Supp. 3d 460, 465 (S.D.N.Y. 2018) (citations omitted). The FDCPA imposes strict liability on debt collectors; the plaintiff need not prove that the prohibited conduct was intentional. *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013).

### 1. The Parties' Arguments

Plaintiff argues that he is entitled to summary judgment on his FDCPA claims because Defendant issued false, deceptive, and misleading communications to a CRA. (Dkt. No. 171-2, p. 10). Specifically, Plaintiff contends that in communications with Experian on August 31 and September 21, 2018, Defendant confirmed the Simon's tradeline, including erroneous information about its balance date, first reported date, and collection status, and failed to convey that the debt was disputed. (*Id.*, pp. 12–14). In contrast, Defendant seeks summary judgment on the grounds that Plaintiff lacks standing and his FDCPA claims are untimely. (Dkt. No. 169-1, pp. 19–21). Alternatively, Defendant asserts that it is entitled to the so-called "bona fide error" affirmative defense. (*Id.*, pp. 22–23).

### 2. Standing & Statute of Limitations

Defendant's standing and statute of limitations arguments largely mirror those made with respect to Plaintiff's FCRA claims. The Court finds that these arguments lack merit for the same reasons discussed above.

### 3. Elements of the Claim

There is no dispute in this case that, for purposes of the FDCPA, Plaintiff is a consumer and Defendant is a debt collector. Next, Plaintiff must show that Defendant engaged in any act or omission in violation of FDCPA requirements. Plaintiff argues that Defendant communicated

to Experian inaccurate information about his debt to EFCU, in violation of Sections 1692e and 1692e(8) of the FDCPA.  (Dkt. No. 171-1, p. 12).  These provisions state that a debt collector may not "not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including including the failure to communicate that a disputed debt is disputed."  15 U.S.C. §§ 1692e, 1692e(8).

Here, the record shows that Defendant communicated information about Plaintiff's debt to credit reporting agencies in 2017 and 2018.  (Dkt. No. 171-9, pp. 3–5).  However, even if this information was false or inaccurate, there is no evidence whatsoever that it was communicated *in connection with the collection of a debt*.  Rather, the undisputed facts show that the debt was satisfied in 2014, and in 2017 and 2018 Defendant reported the debt as paid in full.  (*Id.*; *see also* Dkt. No. 169-2, ¶ 10; Dkt. No. 171-10, p. 2; Dkt. No. 171-11, p. 2; Dkt. No. 171-12, p. 2).

The primary purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  The language of the FDCPA makes crystal clear that its rules relate to the "collection of a debt."  *See e.g.*, 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f.  Plaintiff's arguments omit this crucial element, essentially reading Section 1692e(8) in isolation as the basis for his claim.  But absent an effort to collect a debt, the FDCPA does not apply.  To find otherwise would contradict the purpose and language of the statute.  Because the undisputed facts show that Defendant's actions in 2017 and 2018 did not occur in connection with the collection of a debt, Plaintiff's FDCPA claim fails as a matter of law and must be dismissed.[5]  *See Araujo v. PennyMac Loan Services, LLC*, No. 15 Civ. 62, 2015 WL 5664259, at *3, 2015

---

[5] Because Plaintiff's FDCPA claim fails as a matter of law, the Court need not address Defendant's bona fide error affirmative defense.

U.S. Dist. LEXIS 128222, at *8 (E.D.N.Y. Sept. 23, 2015) ("Plaintiff's claims under § 1692e and § 1692e(11), which purportedly arise from Defendant's October 30, 2014 communication, fail as a matter of law because that communication was not made in connection with the collection of a debt."); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 329–30 (D. Conn. 2012) (finding that the defendant was not subject to 15 U.S.C. § 1692g where, *inter alia*, the defendant was "not attempting to collect a debt but merely responding to [the plaintiff's] voluntary inquiry"); *Gorham–Dimaggio v. Countrywide Home Loans, Inc.*, No. 05 Civ. 583, 2005 WL 2098068, at *2, 2005 U.S. Dist. LEXIS 34237, at *5 (N.D.N.Y. Aug. 30, 2005) (finding that the FDCPA did not apply to claim where the defendant was not "attempting to collect a debt" and made no communication "in connection with the collection of a debt").

### V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 169) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 171) is **DENIED**; and it is further

**ORDERED** that the Second Amended Complaint (Dkt. No. 130) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date:   September 30, 2022
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

15